IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-358-D

| | | |
|---|---|---|
| CAROLINE CHAVIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE #27 & DE #33] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Caroline Chavis ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Each of the parties has filed a memorandum in support of her respective motion, and the time for further filings has expired. This matter was referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [DE #35]. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's motion be allowed, the Commissioner's motion be denied, and this case be remanded to the Commissioner for further proceedings.

**BACKGROUND**

A.  **Statement of the Case**

Claimant protectively filed an application for a period of disability, DIB and SSI on May 23, 2011, alleging a disability onset date of June 30, 2008. (Tr. 20, 210-22.) The applications

were denied initially and upon reconsideration, and a request for hearing was timely filed. (Tr. 143-47, 154-61, 164.) On March 1, 2012, Claimant appeared without representation for an administrative hearing. At the hearing, it became apparent that the agency needed to obtain additional medical records, and an agreement was reached to continue the matter in order to obtain those records and to provide Claimant with additional time to seek representation. (Tr. 45-48.) On May 1, 2012, the hearing was reconvened, and Claimant again appeared without representation. On May 23, 2012, the Administrative Law Judge ("ALJ") issued a written decision denying Claimant's request for benefits on the ground that she is not disabled. (Tr. 20-29.) Following the unfavorable decision, Claimant retained counsel and requested review by the Appeals Council. (Tr. 14.) In support of Claimant's appeal, counsel submitted a "Fibromyalgia Residual Functional Capacity Questionnaire" dated October 3, 2012, and signed by Claimant's neurologist, Dr. Juiafong Zeng. The Appeals Council admitted the new evidence but, on October 25, 2012, denied Claimant's request for review without making any specific findings regarding the evidence.[1] (Tr. 1-2, 4.) As a consequence of the Appeals Council's ruling, the decision of the ALJ became the final decision of the Commissioner. Claimant then filed a complaint in this court seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] In its order denying review, the Appeals Council simply stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 1-2.)

**B.     Disability Evaluation Process**

"Disability" is defined under the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated pursuant to the Act provide a five-step, sequential evaluation process that the ALJ must follow in evaluating a disability claim:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the [applicable] duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id*. At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. §§ 404.1520a(e)(3), 416.920a(e)(3).

Where there are multiple impairments, the ALJ must also "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.*

## DISCUSSION

### A.     Standard of Review

The scope of judicial review of a final agency decision regarding disability benefits under the Act is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the

4

Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642.

In determining whether the Commissioner's decision is supported by substantial evidence, the court reviews the administrative record as whole, including any new evidence incorporated into the record following the ALJ's ruling. *Thomas v. Comm'r of Soc. Sec.*, 24 Fed. App'x 158, 162 (4th Cir. 2001); *Wilkins v. Sec'y, Dept. Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). "Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level." *Sanders v. Colvin*, No. 5:11-CV-773-D, 2013 WL 3777198, at *4, *Memorandum & Recommendation adopted*, 2013 WL 3777198 (E.D.N.C. July 18, 2013). The court may not substitute its judgment for that of the Commissioner, nor may it make findings of fact or credibility determinations. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "In order for this Court to determine whether the [Commissioner's] decision is supported by substantial evidence, [it] must first assess whether the Commissioner has provided adequate information to explain [the] decision." *Thomas*, 24 Fed. App'x at 161.

5

## B. ALJ's Findings

At the administrative hearing in this case, Claimant testified concerning her various impairments, her primary complaints being neurological in nature and related to either her fibromyalgia or neuropathy. She testified she also had bilateral carpal tunnel syndrome that limited her ability to reach, handle and finger, and had been diagnosed with major depressive disorder and post-traumatic stress disorder, as well as hypertension and diabetes. In light of Claimant's *pro se* status, the ALJ told Claimant at the administrative hearing that he would be seeking additional medical records from Claimant's treating physicians and had Claimant provide the appropriate medical releases. Prior to the administrative hearing being reconvened, the ALJ requested additional records from certain providers, including Claimant's neurologist, Dr. Zeng. However, neither the ALJ nor the Appeals Council ever requested any opinion from Claimant's treating physicians and, therefore, no opinion was provided by her neurologist, Dr. Zeng, prior to the ALJ's decision.

Applying the above-described sequential evaluation process and based on the evidence before him, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (Tr. 22.) Next, the ALJ determined Claimant had the following severe impairments: fibromyalgia, peripheral neuropathy, bilateral carpal tunnel syndrome, status post decompression of the right median nerve, diabetes, hypertension, and depression. (Tr. 22-23.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction of her activities of daily living, moderate restriction

in the areas of social functioning and concentration, persistence and pace, and that she has experienced no episodes of decompensation of extended duration. (Tr. 24.)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[2] subject to the following restrictions: (1) "she can occasionally climb stairs or ramps"; (2) "occasional[ly] bend, balance, stoop, kneel, crouch, or crawl"; (3) "never climb ladders, ropes, or scaffolds"; (4) "frequently, but not constantly, finger, hold, and grasp with the bilateral upper extremities"; (5) she "should avoid hazardous machinery"; (6) "is limited to performing simple, routine, and repetitive tasks in a low-production environment"; (7) "cannot make complex decisions or deal with crises"; and (8) "can have [only] occasional contact with the general public." (Tr. 24-25.)

Based on the VE's testimony, the ALJ concluded at step four that Claimant did not have the RFC to perform the requirements of her past relevant work as a nurse's aide and bus driver, both of which are medium level, semi-skilled work. (Tr. 27.) Nonetheless, at step five, upon considering Claimant's age, limited education, work experience and RFC, the ALJ determined that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 28.)

While the ALJ spent considerable time at step three explaining his findings as to Claimant's other impairments (Tr. 23-24), little mention is made of Claimant's fibromyalgia. Noting that fibromyalgia "does not have an applicable medical listing," the ALJ states merely that

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category also requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls.

7

he "has fully considered the allegations of pain and other symptoms as required by SSR 96-3p."[3] He then discredits Claimant's testimony concerning the intensity, persistence and functionally limiting effects of her symptoms based on his finding that "[a]s medication and treatment were optimized, the claimant's symptoms of fibromyalgia and peripheral neuropathy were improved." (Tr. 26.) This finding appears to be based, in large part, upon pain management notes made by Dr. Gootman at Cape Fear Pain Treatment Center. As to these records, the ALJ states that "by October 2009, pain control was noted as good. Subsequent pain management notes through September 2011 documented that pain was generally and [sic] good and no more than slightly uncontrolled." (Tr. 26.) However, a review of Dr. Gootman's complete medical records does not support the ALJ's finding in this regard. In 2010, for example, Dr. Gootman states that Claimant's pain was moderately uncontrolled in March, slightly uncontrolled in May and June, moderately uncontrolled again in August, and slightly uncontrolled in September 2010. (Tr. 553-57.) Her pain control is noted as good in February, March, April, May, August, and December of 2011 (Tr. 560, 561, 563-64, 744, 750), but moderately or slightly uncontrolled in June, July, September, October, and November of 2011, as well as in January and February 2012 (Tr. 740, 742, 745-47, 752, 755).[4] The ALJ acknowledges "some decreased range of motion in the left shoulder" in July 2011, as well as decreased reflexes in Claimant's upper and lower extremities and tenderness in eleven of eighteen trigger points. (Tr. 26.) Nevertheless, the ALJ

---

[3] The ALJ did not determine, pursuant to SSR 12-2p, whether Claimant's fibromyalgia medically equals a listing. SSR 12-2p, which provides guidance in evaluating fibromyalgia disability claims, took effect July 25, 2012, after the ALJ's decision in this case but prior to the decision becoming final upon denial of review by the Appeals Council. The undersigned offers no opinion with regard to the applicability of SSR 12-2p to Claimant's case.

[4] The last records obtained from Dr. Gootman were for office visits on January 27, 2012, and February 29, 2012, the most recent being approximately two months before Claimant's administrative hearing. Notably, Claimant's pain was listed as moderately uncontrolled at each of these visits. (Tr. 752, 755.)

8

concluded that "the objective evidence showed stabilization of [Claimant's] physical and mental symptoms." (Tr. 27.)

As noted in SSR 12-2p, the signs and symptoms of fibromyalgia, and any associated pain, "may vary in severity over time and may even be absent on some days." SSR 12-2p, 2012 WL 3104869, *5 (eff. July 25, 2012). As a consequence, it is imperative that the ALJ have access to and consider longitudinal information when determining whether a claimant's fibromyalgia is disabling. Moreover, a treating physician's opinion should be given great weight absent persuasive conflicting evidence in the record. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983).

The "Fibromyalgia Residual Functional Capacity Questionnaire" completed by Claimant's treating neurologist and incorporated into the record by the Appeals Council contains a number of opinions that are relevant to a determination of the severity of Claimant's fibromyalgia and her residual functional capacity. Dr. Zeng indicates that Claimant's pain is "almost constant" and severe enough to preclude her from performing even simple work tasks and that her pain medications make her dizzy and drowsy. With regard to her functional capacity, Dr. Zeng opines that Claimant can walk four to five city blocks, can sit and stand thirty minutes at one time, can sit four hours and stand or walk two hours in an eight-hour workday, and needs to walk every thirty minutes for ten minutes at a time throughout the workday. He states that Claimant would need a job that permits her to shift positions at will from sitting, standing and walking and would need unscheduled breaks of five to ten minutes in duration every one to two hours. It is Dr. Zeng's further opinion that Claimant should lift ten pounds only occasionally, should never crouch, squat or climb ladders, and should only rarely twist, stoop or bend and climb stairs. He states she can only occasionally look up or down, turn her head to the right or left, and hold her head in a static

9

position, that her impairments are likely to produce "good days" and "bad days" and that she is likely to be absent from work more than four days per month due to her impairment. Dr. Zeng indicates that the symptoms and limitations listed in his assessment relate back to June 2011.

While the Appeals Council admitted Dr. Zeng's opinions into evidence, the ALJ did not have the benefit of this material information at the time of his decision and the Appeals Council made no findings with regard to this newly admitted evidence in its order denying review. Because this evidence was made a part of the record and considered by the Appeals Council prior to its denial of review, the court must include this evidence in its review of the record as a whole. *Thomas*, 24 Fed. App'x at 162; *Sanders*, 2013 WL 3777198, at *4 ("Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, 'the court must review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings.'" (quoting *Felts v. Astrue*, No. 1:11CV54, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012)) (first alteration in original) (internal quotation marks omitted)).

Given the materiality of Dr. Zeng's opinions, the undersigned finds that remand is necessary. The undersigned expresses no opinion regarding the weight to be accorded Dr. Zeng's opinions. Absent further explanation of the Commissioner's findings, however, the court is unable to determine whether Claimant's condition of fibromyalgia was properly considered at the applicable steps of the sequential analysis and, if so, the weight given such evidence and the reasons therefor. Consequently, the court is precluded from determining whether the Commissioner's decision is supported by substantial evidence in the record and based on the proper legal standards.

10

# **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE #27] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #33] be DENIED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 23rd day of January 2014.

KIMBERLY A. SWANK
United States Magistrate Judge